Mark L. Javitch* (CA SBN 323729)
Javitch Law Office
480 S. Ellsworth Ave
San Mateo, CA 94401
Telephone: 650-781-8000
Facsimile: 650-648-0705
mark@javitchlawoffice.com
*Attorney for Plaintiff*
and those similarly situated
*Pending Pro Hac Vice Admission

UNITED STATES DISTRICT COURT

DISTRICT OF NEBRASKA

| | |
|---|---|
| TERRANCE SHANAHAN, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>HARD TACK INC., a Delaware Corporation, DEALER RENEWAL SERVICES., an unknown Florida business entity, BUDCO BUSINESS TO BUSINESS INC., D/B/A BUDCO FINANCIAL SERVICES, a Michigan Corporation, ROYAL ADMINISTRATION SERVICES, INC., a Florida Corporation, AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA, a Florida corporation, Doe 1, an unknown business entity, and DOES 2-5, inclusive<br><br>Defendants. | Case No.:  8:19-CV-00441<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

1. Plaintiff TERRANCE SHANAHAN ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against HARD TACK INC., a Delaware Corporation, Defendant DEALER RENEWAL SERVICES, an unknown entity, Defendant BUDBO BUSINESS TO BUSINESS INC., D/B/A BUDCO FINANCIAL SERVICES, a Michigan Corporation, Defendant ROYAL

1

ADMINISTRATION SERVICES, INC., a Florida Corporation, Defendant AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA, a Florida Corporation and Defendant DOES 1-5 inclusive (together, "Defendants") for selling their products via illegal robocalls, to get them to stop playing prerecorded voice messages to consumers nationwide, and to obtain redress for all persons injured by their conduct. Plaintiff alleges as follows upon personal knowledge as to itself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by its attorney,

**NATURE OF THE ACTION**

2. In the course of selling their services, Defendants and/or their agents placed thousands of automated calls to consumers' cell phones nationwide using an automatic telephone dialing system in violation of the TCPA.

3. However, Defendants did not obtain consent prior to placing these calls and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

4. Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

5. The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendants' use of technological equipment to spam consumers with its advertising on a grand scale.

6. By placing the calls at issue, Defendants have violated the statutory rights of Plaintiff and the Class.

7. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted) ("the FCC Letter").

8. Plaintiff therefore seeks an injunction requiring Defendants to stop its unconsented calling, as well as an award of actual and statutory fines to the Class members, together with costs and reasonable attorneys' fees.

**PARTIES**

9. Plaintiff TERRANCE SHANAHAN is a natural person and is a citizen of the District of Nebraska.

10. Defendant HARD TACK INC. ("Defendant HARD TACK") is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at 1800 Old Okechobee Road, #200A, West Palm Beach, FL 33409. Its registered agent is Registered Agent, Inc., 8 The Green, Suite A, Dover, Delaware 19901.

11. Defendant DEALER RENEWAL SERVICES ("Defendant DEALER") is an unknown business entity organized and existing under the laws of the State of Florida with its principal place of business at 3300 S. Dixie Hwy, #1-142, West Palm Beach, FL 33405.

12. Defendant BUDCO BUSINESS TO BUSINESS INC. D/B/A BUDCO FINANCIAL SERVICES (Defendant "BUDCO") is a corporation organized and existing under the laws of the State of Michigan with its principal place of business at 333 W. Fort Street, Suite 1750, Detroit, MI 48226.

BUDCO's registered agent is The Corporation Company, 40600 Ann Arbor Rd E Ste 201, Plymouth, Michigan, 48170.

13. Defendant ROYAL ADMINISTRATION SERVICES INC. (Defendant "ROYAL") is a corporation organized and existing under the laws of the State of Florida with its principal place of business at 51 Mill Street, Building F, Hanover, MA 02339. Its registered agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

14. Defendant AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA (Defendant "AMERICAN") is a corporation organized and existing under the laws of the State of Florida with its principal place of business at 11222 Quail Roost Drive, Miami, FL 33175. Its registered agent is the Chief Financial Officer, located at 200 E. Gaines Street, Tallahassee FL 32399.

15. Defendant DOE 1 is an unknown business entity.

16. The true names and capacities of the Defendant sued herein as DOES 1-5, inclusive are currently unknown to Plaintiff, who therefore sue such Defendants by their fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

17. Plaintiffs does not yet know the identity of Defendants' employees/agents identified as DOES 1-5, inclusive, that had direct, personal participation or personally authorized the conduct found to have violated the statute and were not merely tangentially involved. They are named tentatively as numerous District Courts have found that individual officers/principals of corporate entities may be personally liable (jointly and severally) under the TCPA if they had direct personal participation in or personally authorized the conduct found to have violated the statute and were not merely tangentially involved.

## JURISDICTION AND VENUE

18. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

19. This Court has personal jurisdiction over Defendants because they placed phone calls into this District in the State of Nebraska and this lawsuit arises directly out of the contacts between Defendants and Nebraska.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the wrongful conduct giving rise to this case occurred in this District.

## COMMON FACTUAL ALLEGATIONS

21. Defendants are companies that market, sell, finance and provide vehicle service contracts to consumers.

22. Defendant HARD TACK and/or Defendant DEALER is/are the sales agents for the joint product with the other Defendants.

23. Defendant ROYAL is the administrator and the party responsible for the benefits of the vehicle service contract.

24. Defendant BUDCO is the financer of the vehicle service contract.

25. Defendant AMERICAN is a secondary insurer for the contract.

26. To increase the reach of their efforts in writing Vehicle Service contracts, Defendants and/or their authorized sales agents repeatedly called thousands of cell phones at a time using an automatic telephone dialing system in violation of the TCPA.

27. Defendants and/or their authorized sales agents used an automatic telephone dialing system to conceal or "spoof" their actual phone number in order to trick Plaintiffs into answering a familiar number.

28. When Plaintiff and the Class members answered their cellular phones, they heard silence

for several seconds and a distinct "click" sound before being transferred to a live agent, which further denotes the use of an automatic telephone dialing system.

29. Upon information and belief, the technology used to robocall Plaintiff and the Class had the capability to store phone numbers and dial those numbers automatically.

30. Unfortunately, Defendants failed to obtain consent from Plaintiff and the Class before bombarding their cell phones with these illegal voice recordings.

**FACTS SPECIFIC TO PLAINTIFF TERRANCE SHANAHAN**

31. On August 30, 2019 at 9:45 a.m., Plaintiff received a call on Plaintiff's cell phone number.

32. The caller ID on the incoming call displayed as (531) 365-0094.



33. When Plaintiff answered his phone, Plaintiff said "hello" several times, but there was silence for several seconds. Plaintiff then heard a "click" sound before a live agent with Defendant Doe 1 answered.

34. Defendant Doe 1 asked Plaintiff for details about his car, such as the make, model, and mileage.

6

35. Defendant Doe 1 then transferred Plaintiff to a live sales representative with Defendant HARD TACK and/or Defendant DEALER.

36. In order to investigate the companies who were responsible for the illegal and unauthorized call to Plaintiff's cellular telephone, Plaintiff purchased and the vehicle service contract which was administered, insured and financed by ROYAL, BUDCO, and AMERICAN.

37. Plaintiff never consented to receive calls from Defendants. Plaintiff had no relationship with Defendants prior to this illegal phone call.

38. Defendants' call violated Plaintiff's statutory rights under the TCPA.

## BASIS FOR LIABILITY: DIRECT LIABILITY

39. Defendants ROYAL, BUDCO and AMERICAN have effectively outsourced their illegal robocalling to Defendant HARD TACK and/or Defendant DEALER and/or Defendant John Doe.

40. But this is not a basis for avoiding liability.

41. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

## AGENCY ALLEGATIONS

42. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id*. at 6587 n. 107.

43. Prior to conducting discovery in this litigation, due to the anonymous nature of robocalling, Plaintiff has no way to identify the exact party who called his phone.

44. However, for the purposes of TCPA liability, Plaintiff is not expected to know this information at the pleading stage.

45. The May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id*. at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id*. at 6593 (¶ 46).

46. Even if Defendants HARD TACK, DEALER, ROYAL, BUDCO and AMERICAN allege that they did not personally make the TCPA-violating calls, Defendants are still liable for Defendant Doe 1's actions if it took steps to cause the calls to be made, or if the calls were made pursuant to Defendants' actual authority, apparent authority and/or ratification, or pursuant to joint enterprise or acting in concert liability.

## BASIS FOR LIABILITY: ACTUAL AUTHORITY

47. Defendants ROYAL, BUDCO, and AMERICAN authorized Defendants HARD TACK, DEALER and/or Doe 1 to generate prospective customers. Defendants' integration of robocalling into its sales process was so seamless that it appeared to an outside party like Plaintiff that Defendants HARD

TACK, DEALER and/or Doe 1 was the telemarketing department of Defendants ROYAL, BUDCO, and AMERICAN.

48. But apparently, Defendants HARD TACK, DEALER and/or Doe 1 were an outside firm that Defendants hired, which permitted ROYAL, BUDCO, and AMERICAN to enjoy the benefits of mass robocalling while moving the illegal activity "outside their purview."

49. Accordingly, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

50. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id*. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

51. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

52. ROYAL, BUDCO, and AMERICAN manifested to HARD TACK, DEALER and/or Doe 1 that they wanted HARD TACK, DEALER and/or Doe 1 to recruit particular types of customers for them on a large scale.

53. HARD TACK, DEALER and/or Doe 1 accepted the undertaking.

54. There was an understanding that ROYAL, BUDCO, and AMERICAN controlled HARD TACK, DEALER and/or Doe 1 by specifying the criteria of potential customers that would be most profitable for Defendants to sell to after they had been robocalled.

55. Assured also specified criteria to HARD TACK, DEALER and/or Doe 1 to receive live incoming call transfers of consumers generated pursuant to robocalls.

56. Assured coordinated its technological capabilities with HARD TACK, DEALER and/or Doe 1 for its telemarketing agents to receive live transfers of incoming calls generated pursuant to robocalls.

57. ROYAL, BUDCO, and AMERICAN integrated their systems with HARD TACK, DEALER and/or Doe 1 so they could access the records of the people with whom they executed contracts.

58. Upon information and belief ROYAL, BUDCO, and AMERICAN had access to the sales and customers generated by the illegal robocalling.

## BASIS FOR LIABILITY: APPARENT AUTHORITY

59. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

60. ROYAL, BUDCO, and AMERICAN authorized HARD TACK, DEALER and/or Doe 1 to generate prospective customers for them.

61. The integration of their sales efforts with robocalling Defendants used was so seamless that it appeared to Plaintiff that HARD TACK, DEALER and/or Doe 1 was one and the same company with all the Defendants.

62. Plaintiff reasonably believed and relied on the fact that HARD TACK, DEALER and/or Doe 1 had received permission and instructions to conduct activity on their behalf by ROYAL, BUDCO, and AMERICAN.

## BASIS FOR LIABILITY: RATIFICATION

63. ROYAL, BUDCO, and AMERICAN knowingly accepted business that originated through the illegal robocalls placed by HARD TACK, DEALER and/or Doe 1.

64. Despite being on notice of frequent violations, Defendants continue to work with companies that perform robocalling.

65. By accepting these contacts and relying on them to execute contracts, ROYAL, BUDCO, and AMERICAN "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of HARD TACK, DEALER and/or Doe 1, as described in the Restatement (Third) of Agency.

66. ROYAL, BUDCO, and AMERICAN ratified HARD TACK, DEALER and/or Doe 1's TCPA violations by knowingly accepting the benefit of large volume of sales, despite that these sales were generated illegally.

67. Defendants took advantage of the violations by having their salespeople solicit the prospective customers while turning a blind eye to the way the potential customer was identified.

68. Defendants ratified HARD TACK, DEALER and/or Doe 1's TCPA violations by being willfully ignorant of the violations or by being aware that such knowledge was lacking.

69. ROYAL, BUDCO, and AMERICAN ratification caused HARD TACK, DEALER and/or Doe 1 to have their actual authority. Restatement § 4.01 cmt. b.

## BASIS FOR LIABILITY: JOINT ENTERPRISE

70. ROYAL, BUDCO, and AMERICAN each had a tacit agreement or approved of after the fact with Doe 1 for the sale of their products pursuant to HARD TACK, DEALER and/or Doe 1's illegal robocalls.

71. Defendants were all part of a common enterprise and had a community of interest in quickly selling their joint vehicle service contracts pursuant to aggressive telemarketing.

72. Defendants had an equal right to control the conduct thereof by specifying who should be called, the questions that should be asked to people that were robocalled, and the procedure for transferring live customer calls.

73. HARD TACK, DEALER and/or Doe 1's violation of the TCPA is negligence per se.

74. Because of HARD TACK, DEALER and/or Doe 1's negligence, Plaintiff suffered damage.

75. Defendants are all jointly and severally liable for the resulting damage caused by HARD TACK, DEALER and/or Doe 1's.

## BASIS FOR LIABILITY: ACTING IN CONCERT

76. ROYAL, BUDCO, and AMERICAN acted in concert with HARD TACK, DEALER and/or Doe 1's when they arranged to solicit and accepted live customer calls from the people that were identified pursuant to HARD TACK, DEALER and/or Doe 1's illegal robocalls.

77. Defendants were part of a common design to robocall consumers and then solicit them for vehicle service contracts.

78. Defendants had a tacit understanding that HARD TACK, DEALER and/or Doe 1 was robocalling in violation of the TCPA.

79. ROYAL, BUDCO, and AMERICAN knew that HARD TACK, DEALER and/or Doe 1's conduct was a breach of duty to Plaintiff in violating the TCPA.

80. ROYAL, BUDCO, and AMERICAN gave HARD TACK, DEALER and/or Doe 1 substantial assistance in accomplishing the tortious result, including compensating HARD TACK, DEALER and/or Doe 1 for generating customers pursuant to robocalls and giving instructions on how to represent them and what to ask the people that had been robocalled.

81. ROYAL, BUDCO, and AMERICAN furthered the tortious conduct by their cooperation, request, and compensation they paid to HARD TACK, DEALER and/or Doe 1, and by adopting HARD TACK, DEALER and/or Doe 1's acts for their own benefit.

82. ROYAL, BUDCO, and AMERICAN own conduct constitutes a breach of duty to Plaintiff.

83. Plaintiff's injury is indivisible.

84. All Defendants acted tortiously and the harm resulted from the robocalling of HARD TACK, DEALER and/or Doe 1.

85. ROYAL, BUDCO, and AMERICAN are therefore jointly and severally liable for the resulting damage caused by HARD TACK, DEALER and/or Doe 1.

## CLASS ALLEGATIONS

86. **Class Definitions**: Plaintiff Shanahan brings this action pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), and/or 23(b)(3) on behalf of himself and a class defined as follows:

> **TCPA Class**. All persons in the United States who: (1) from the last 4 years to present (2) who received at least one telephone call; (3) on his or her cellular or residential telephone; (4) that used an automatic telephone dialing system; (5) for the purpose of promoting Defendant's services; (6) where Defendant did not first obtain the person's express written consent.

87. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been

finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

88. **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but it is clear that individual joinder is impracticable. On information and belief, Defendants placed telephone calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendants' records.

89. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited telephone calls.

90. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

91. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

92.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   i.      Whether Defendants' conduct violated the TCPA;

   ii.     Whether Defendants' conduct violated the TCPA *willingly* and/or *knowingly*;

   iii.    Whether Defendants used an automatic telephone dialing system to place calls to thousands of cell phones;

   iv.     Whether Defendants obtained prior written consent prior to contacting any members of the Class;

   v.      Whether members of the Class are entitled to treble damages based on the knowingness or willfulness of Defendants' conduct.

93.     **Superiority**: Plaintiff's case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of plaintiff's controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in Plaintiff's Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

# FIRST CAUSE OF ACTION
## Violation of 47 U.S.C. § 227
### (On behalf of Plaintiff and the Class)

94. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

95. Defendants and/or its agents placed calls using an automatic telephone dialing system to Plaintiff's and the Class members' cellular telephones without having their prior express written consent to do so.

96. The system used by Defendants to place such automated calls had the capability to store a list of numbers and automatically dial those numbers.

97. Defendants calls were made for the purpose of advertising and marketing their products and services related to automotive protection plans.

98. Defendants used an automatic telephone dialing system as proscribed by 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B) to generate Plaintiff's phone number as well as the phone numbers of the Class members.

99. As a result of its unlawful conduct, Defendants repeatedly invaded Plaintiff's and the Class's personal privacy, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling them to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop their illegal calling campaign.

100. Defendants made the violating calls "*willfully*" and/or "*knowingly*" under 47 U.S.C. § 227(b)(3)(C).

101. If the court finds that Defendants *willfully* and/or *knowingly* violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff TERRANCE SHANAHAN, individually and on behalf of the Class, prays for the following relief:

A. An order certifying the Class as defined above, appointing Plaintiff TERRANCE SHANAHAN as the Class representative and appointing Plaintiff's counsel as Class Counsel;

B. An order declaring that Defendants' actions, as set out above, violate the TCPA;

C. An order declaring that Defendants' actions, as set out above, violate the TCPA *willfully* and *knowingly*;

D. An injunction requiring Defendants to cease all unlawful calls without first obtaining the call recipients' prior express written consent to receive such calls, and otherwise protecting interests of the Class;

E. An award of actual damages and/or statutory fines, costs and penalties;

F. Such other and further relief that the Court deems reasonable and just.

### JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: October 9, 2019

Respectfully submitted,

TERRANCE SHANAHAN, individually and on behalf of all others similarly situated,

By: /s/ Mark L. Javitch_____.

Mark L. Javitch (California SBN 323729)*
Javitch Law Office
480 S. Ellsworth Ave
San Mateo CA 94401
Tel: 650-781-8000
Fax: 650-648-0705

*Attorney for Plaintiff*

and those similarly situated
*Pending Pro Hac Vice Admission